PROPRIETORS OF THE LOCKS AND CANALS ON MERRIMACK
RIVER *vs.* CITY OF LOWELL.

A canal corporation may maintain an action of tort against a city, for laying down sewers
and drains, through lands purchased by the corporation for the use of their canal, and
emptying into the canal; though the city is authorized by its charter " to cause drains
and common sewers to be laid down through streets and private lands;" and though
the canal was constructed in the channel of an ancient natural watercourse.

ACTION OF TORT for constructing sewers and drains in Lowell,
leading and emptying into a canal constructed and owned by
the plaintiffs. The parties submitted the case to the court upon
the following statement of facts :

" The plaintiffs are a corporation, created by an act of this
commonwealth, passed on the 27th of June 1792, which said act
and the several acts in addition thereto, are to be made a part
of this case.

" The plaintiffs, by virtue of said acts, built a canal called the
Pawtucket Canal, from the head of Pawtucket Falls on the
Merrimack River, then in Chelmsford, now in Lowell, to a point
in the Concord River near its discharge into the Merrimack, and
also various branch canals for the purpose of distributing water
for manufacturing purposes, in driving water mills in various
parts of the city. These canals have, down to the present time,
been maintained for the purposes of navigation, and also for
manufacturing purposes, by the plaintiffs.

" The defendants, within six years before the commencement
of this action, located and subsequently built six sewers or
drains, leading from points on the southerly side of said Paw-
tucket Canal, above the point where Thorndike Street crosses
the same, into said canal; and said sewers and drains have
since their erection discharged themselves into said canal,
thereby injuring the same, and corrupting the water, filling up
the canals, and rendering them less valuable for manufacturing
and other purposes, as claimed by the plaintiffs, but not admit-
ted by the defendants. These drains were laid down through

the land of the plaintiffs, owned by purchase, and bordering on their canal; and the plaintiffs were notified, in the proper manner provided by law and the city ordinance, of the intention of the city to lay down such drains through said land. The plaintiffs objected to so constructing said drains as to discharge into their canal. No damages were ever allowed or paid the plaintiffs for the construction of said drains, except in one case, where nominal damages were allowed, which the plaintiffs refused to accept.

" The defendants claim that where said Pawtucket Canal receives said sewers and drains it was constructed through low swampy ground, and that, where the canal now is, a small natural brook formerly existed, which discharged itself into the Concord River; and that the land on the south of said canal, through which said sewers and drains now run, was so situated that the waters from it naturally drained into said low land and brook, and so into Concord River.

" At the time said Pawtucket Canal was built, the land on the southerly side thereof, through which the drains and sewers aforesaid were built by the city, was not occupied by any dwelling houses or buildings; and it was not until many years after, that the same became occupied by dwelling-houses and buildings.

" If the court are of opinion that the plaintiffs can maintain this action under the circumstances aforesaid, taking the facts in reference to the low ground and brook as claimed by the defendants, then the action is to stand for trial for the purpose of ascertaining the damages. If the court are of opinion that the said facts claimed by the defendants alter or vary in any way the legal relation of the parties to each other, or the rights of the plaintiffs or the liabilities of the defendants, then the case is to be submitted to a jury to ascertain the facts in relation thereto. But if the court are of opinion that, even if the facts in relation to the low ground and brook aforesaid did not exist, the plaintiffs cannot maintain this action, then they are to become nonsuit."

This case was argued at Cambridge in October.

*J. G. Abbott*, for the plaintiffs.

*B. F. Butler & A. R. Brown*, for the defendants. The city council of Lowell are authorized by the city charter to " cause drains and common sewers to be laid down through any streets or private lands, paying the owners thereof such damage as they may sustain thereby," and the only remedy of any party aggrieved is by proceedings before a sheriff's jury. *St.* 1836, *c.* 128, § 9. This is a special grant of power by the legislature, for a special purpose, to secure the health and cleanliness of the number of people accumulated at that place, in which, as the legislature must have known, there were many canals. Private property cannot be taken without necessity ; but of that necessity the legislature are the judges. The use of the plaintiffs' canal for manufacturing purposes is not a public use ; and it does not appear that the draining of water into it interferes with its use as a public highway for the purposes of navigation, or renders it unwholesome. Besides ; the plaintiff's canal was laid in a brook through which these lands were formerly and naturally drained.

MERRICK, J. The defendants attempt to justify the acts complained of, under the authority conferred upon the city council, by the ninth section of the city charter, " to cause drains and common sewers to be laid down through streets and private lands." But this is insufficient. All the land of which the plaintiffs appear to be in possession was acquired by them under and by virtue of the provisions of their act of incorporation, and solely for the accomplishment of the object contemplated in its enactment. It was thus, in the exercise of the right of eminent domain, and under a special statute expressly authorizing and allowing it, appropriated to the public use. For this purpose only the plaintiffs were constituted a corporation, with the privilege of establishing, constructing and maintaining a navigable canal, which should constitute a common and public way, open to all persons disposed, upon the terms prescribed by law, to avail themselves of the means afforded by it for travel or the transportation of their property. And having accepted the grant and constructed their canal, they are expressly required

and bound to keep it constantly in a safe and navigable state of repair ; so that the facilities which it is capable of affording, and the advantages which may be derived from its use while in such condition, may be uninterruptedly enjoyed by the community. *St.* 1792, *c.* 13, § 10.   Being subject to this responsibility, it is obvious that anything which tends to obstruct, or to create an impediment in the navigation of their canal, must necessarily bring upon them increased charges and expenditures.   If such effects are produced by the unlawful acts and interference of other parties, the plaintiffs will have good cause of action against the wrongdoers to recover compensation for whatever damages or injury they may have thereby sustained.

It is undoubtedly true that land or other property, which has once, in conformity with the provisions of the Constitution, been devoted to the public use, may afterwards in like manner be again taken and appropriated to the public service under a subsequent statute duly enacted, if such a purpose is expressly, or by unavoidable implication, authorized by its provisions.   For, in every exigency that can from time to time occur, the right to take private property for public use must remain paramount in the State, or its power to promote the general welfare would be paralyzed and destroyed.   It belongs to the legislature to determine when these exigencies arise, and upon what occasions this extreme right of the government shall be exercised and enforced. Thus, a portion of land laid out for a public common, may by special provision of law be converted into a public highway ; and again, a portion or the whole of a public highway may be appropriated to the service of a private corporation empowered to construct, and required to maintain for the public use an iron railway. *Wellington, petitioners,* 16 Pick. 103. *Springfield* v. *Connecticut River Railroad,* 4 Cush. 72.   These cases afford illustrations of the general power of the legislature to devote to another and new service, for the use and accommodation of the public, any species of private property, although it may have before, for a similar purpose but in a different manner, been specially set apart and appropriated.

But if such an appropriation has once been made, the prop-

erty cannot afterwards be interfered with, or the right of holding and enjoying it in that definite manner be interrupted or disturbed, except under the provisions of some subsequent statute, expressly or by necessary implication authorizing its subjection to public service in another and different manner. This principle, applied to the present case, is decisive of the rights of the parties in relation to the point in controversy between them. The plaintiffs have, under their charter, already acquired the exclusive right to the possession and occupation of the lands upon and through which the defendants have caused their drains to be laid and constructed.

But the defendants contend that this right has been superseded by the same authority from which the grant of it was derived. This undoubtedly could have been done. For it is, as has already been shown, clearly competent for the legislature, in order to meet a pressing emergency and to accomplish some object of immediate public necessity or importance, to determine that a new appropriation of these lands ought to be allowed. If it should be found essential or reasonably necessary for the public good, as, for instance, to preserve or promote the health of the inhabitants of a city rapidly increasing in population, to take the lands and use the canal of the plaintiffs for the purpose of drainage, such an appropriation might undoubtedly be made under statutes containing suitable provisions and conferring the requisite authority. But no such necessity is declared, nor is any such right given to the defendants by any of the provisions of their city charter. The city council are indeed therein allowed, by a provision expressed in very general terms, to lay down drains and sewers through streets and private lands. But in this there is no such directness and particularity as to import that a new appropriation to the public use of land which had already been lawfully taken, and was still held and devoted by the plaintiffs to another public service, was intended by, or even at all in the contemplation of, the legislature. Indeed, we think it sufficiently appears from the phraseology of the act, that nothing of that kind was intended ; for the right granted to the city, in relation to the location and construction of drains, extends only to a privilege

of entering upon and occupying "streets and private lands." Without giving to these words a forced meaning, much enlarged beyond their just and proper signification, they cannot be considered as descriptive of, or designed to comprehend, the plaintiffs' canal. At any rate, no express authority is conferred upon the defendants, either to occupy or interfere with the lands of the plaintiffs, so as to disturb them in the enjoyment of their franchise ; nor is there anything in the statement of facts upon which the case is submitted, which will warrant the conclusion that in the exercise of the authority conferred on the defendants there is any actual or substantial necessity for occupying any part of the plaintiffs' property.

It has been suggested, in the argument for the defendants, that the right of the plaintiffs to the lands taken by them for the purpose of locating and establishing their canal, which might have otherwise been absolute and conclusive, is modified and limited by the fact that the canal was constructed, in fact, in and along the channel of an ancient brook flowing through the territory of which the city of Lowell consists. But this can make no difference. Whatever was the condition or use of the land or property at the time it was taken by the plaintiffs, as it was then lawfully taken and appropriated by virtue of their charter to the public use, they have still the right to hold and retain it exclusively in their own possession, according to the terms of their grant. This is a right to an unmolested enjoyment of the property ; and it is just as clear and unqualified in relation to the stream referred to, including its banks and channel, as to any of the lands through which the canal was excavated or constructed.

Pursuant to the agreement of the parties this action is to stand for trial, solely for assessment of damages sustained by the plaintiffs by the acts complained of